# E X H I B I T  "A"

**JURY OF TWELVE (12) DEMANDED**
**ASSESSMENT OF DAMAGES IS REQUIRED**

MARCIANO MACAVOY, P.C.
BY:  KEVIN R. MARCIANO, ESQUIRE
I.D. No. 65901
PATRICK MACAVOY, ESQUIRE
I.D. No. 209005
16 W. Front Street
Media, PA 19063
(610) 566-6500
Fax (610) 566-6501
kmarciano@marcianolegal.com
pmacavoy@marcianolegal.com

Attorneys for Plaintiff

Filed and Attested by
02 OCT 2015 11:32 am
K. SEWARDS

---

| | | |
|---|---|---|
| AMALIA ULMAN | : | |
| 811 Wilshire Blvd., Suite 1717 | : | COURT OF COMMON PLEAS |
| Los Angeles, CA 90017 | : | OF PHILADELPHIA COUNTY, PA |
| | : | |
| Plaintiff | : | CIVIL ACTION-LAW |
| | : | |
| vs. | : | |
| | : | |
| GREYHOUND LINES, INC. | : | No. |
| 350 N. St. Paul Street, MS 350 | : | |
| Dallas, TX 75201 | : | |
| | : | |
| and | : | |
| | : | |
| SABRINA ANDERSON | : | |
| 4421 Granada Boulevard, Apt. 530 | : | |
| Cleveland, OH 44128 | : | |
| | : | |
| and | : | |
| | : | |
| FIRSTGROUP AMERICA | : | |
| 350 N. St. Paul Street, Suite 2900 | : | |
| Dallas, TX 75201 | : | |
| | : | |
| and | : | |
| | : | |
| HI-TECH RESOURCE RECOVERY | : | |
| 130 Verick Ave. | : | |
| Brooklyn, NY 11237 | : | |
| | : | |
| and | : | |

1

Case ID: 150903512

C.A.V. ENTERPRISE, LLC      :
39 Butcher Road          :
Monroe Township, NJ 08831   :
                  :
     and           :
                  :
AKOS GUBICA         :
39 Butcher Road          :
Monroe Township, NJ 08831   :
                  :
     Defendants       :

**<u>CIVIL ACTION COMPLAINT – 2V Motor Vehicle Accident</u>**

2

# NOTICE TO DEFEND

### "NOTICE"

"You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP." THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE FOR NO FEE.

> Philadelphia Bar Association
> Lawyer Referral
> and Information Service
> One Reading Center
> Philadelphia, PA 19107
> (215) 238-6333
> TTY (215) 451-6197

### "AVISO"

"Le han demando a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación.  Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

"LLEVE ESTA DEMANDA A UN AGOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL." ESTA OFICINA PUEDE PODER PROVEER DE USTED LA INFORMACIÓN SOBRE LAS AGENCIAS QUE PUEDEN OFRECER SERVICIOS JURÍDICOS A LAS PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO PARA NINGÚN HONORARIO.

> Asociacion de Licenciados
> de Filadelfia
> Servicio de Referencia e
> Informacion Legal
> One Reading Center
> Philadelphia, PA 19107
> (215) 238-6333
> TTY (215) 451-6197

3

Case ID: 150903512

JURY OF TWELVE (12) DEMANDED
ASSESSMENT OF DAMAGES IS REQUIRED

**MARCIANO MACAVOY, P.C.**
**BY:  KEVIN R. MARCIANO, ESQUIRE**                Attorneys for Plaintiff
I.D. No. 65901
**PATRICK MACAVOY, ESQUIRE**
I.D. No. 209005
16 W. Front Street
Media, PA 19063
(610) 566-6500
Fax (610) 566-6501
kmarciano@marcianolegal.com
pmacavoy@marcianolegal.com

---

| | |
|---|---|
| AMALIA ULMAN<br>811 Wilshire Blvd., Suite 1717<br>Los Angeles, CA 90017 | :    COURT OF COMMON PLEAS<br>:    OF PHILADELPHIA COUNTY, PA<br>: |
|     Plaintiff | :    CIVIL ACTION-LAW<br>: |
|     vs. | :<br>: |
| GREYHOUND LINES, INC.<br>350 N. St. Paul Street, MS 350<br>Dallas, TX 75201 | :    No.<br>:<br>: |
|     and | :<br>: |
| SABRINA ANDERSON<br>4421 Granada Boulevard, Apt. 530<br>Cleveland, OH 44128 | :<br>:<br>: |
|     and | :<br>: |
| FIRSTGROUP AMERICA<br>350 N. St. Paul Street, Suite 2900<br>Dallas, TX 75201 | :<br>:<br>: |
|     and | :<br>: |
| HI-TECH RESOURCE RECOVERY<br>130 Verick Ave.<br>Brooklyn, NY 11237 | :<br>:<br>: |
|     and | :<br>: |

2

Case ID: 150903512

C.A.V. ENTERPRISE, LLC                    :
39 Butcher Road                           :
Monroe Township, NJ 08831                 :
                                          :
        and                               :
                                          :
AKOS GUBICA                               :
39 Butcher Road                           :
Monroe Township, NJ 08831                 :
                                          :
        Defendants                        :

---

## COMPLAINT

### I.   PARTIES

1.      Plaintiff, Amalia Ulman, is an adult individual, who is a resident and citizen of the State of California residing at 811 Wilshire Blvd., Suite 1717, Los Angeles, CA 90017.

2.      Defendant Greyhound Lines, Inc. [hereinafter "Greyhound"] is a corporation incorporated in the state of Delaware with its principal headquarters located at the address noted in the caption above and it is a Defendant herein.   Further, during all times relevant hereto, Defendant Greyhound has engaged in business in the County of Philadelphia on a regular, systematic, substantial and continuous basis.

3.      Defendant FirstGroup America [hereinafter, referred to as "Defendant FirstGroup"], is a Delaware Corporation with its principal place of business in Dallas County, Texas, and may be served with process through its registered Texas Agent at CT Corporation System, 350 N. St Paul Street, Suite 2900, Dallas, Texas 75201.

4.      Upon information and belief, Defendant Sabrina Anderson is an adult individual with a place of residence as noted in the caption above and she is a Defendant herein.

5.      Upon information and belief, Defendant Akos Gubica is an adult individual with a place

3

of residence as noted in the caption above and he is a Defendant herein.

6.      Defendant C.A.V. Enterprise, LLC is a limited liability company incorporated in the state of New Jersey with its principal headquarters located at the address noted in the caption above and it is a Defendant herein.   Further, during all times relevant hereto, Defendant C.A.V. Enterprise, LLC has engaged in business in the County of Philadelphia on a regular, systematic, substantial and continuous basis.

7.      Defendant Hi-Tech Resource Recovery, Inc. is a company incorporated in the state of New York with its principal headquarters located at the address noted in the caption above and it is a Defendant herein.   Further, during all times relevant hereto, Defendant Hi-Tech Resource Recovery, Inc., has engaged in business in the County of Philadelphia on a regular, systematic, substantial and continuous basis.

8.      At all times relevant hereto, Defendant Greyhound regularly conducted business in Philadelphia County, Pennsylvania.

9.      Upon information and belief, Defendant Greyhound has a hub transportation center and bus terminal located in Philadelphia County, less than six blocks from the Philadelphia County Court of Common Pleas.

10.     Upon information and belief, at all times relevant hereto, Defendant FirstGroup owns, operates and/or controls, Defendant Greyhound, which is a common carrier, in the business of transporting large numbers of passengers in interstate travel.

11.     Upon information and belief, at all times relevant hereto, Defendant FirstGroup and/or Defendant Greyhound owned, operated, controlled, maintained and/or leased the interstate passenger bus that was involved in the incident described in this Complaint. As such, at all times relevant hereto, Defendant FirstGroup and/or Defendant Greyhound owed the highest degree of

4

care to its bus passengers, including Plaintiff Amalia Ulman.

12.    Upon information and belief, at all times relevant hereto, Defendant FirstGroup and/or Defendant Greyhound breached that duty of care, directly and proximately causing Plaintiff Amalia Ulman to suffer serious and significant injuries, as more fully described hereinafter.

13.    At all times relevant hereto, Defendant Greyhound's interstate passenger bus operator, Sabrina Anderson (hereinafter "Anderson"), was acting in the course and scope of her employment with Defendant Greyhound and at no relevant time was she engaged in a frolic and/or detour.

14.    At all times relevant hereto, Defendant Greyhound's employee, Anderson, was acting with both apparent and actual authority on behalf of her employer, principal, and master, Greyhound.

15.    At all times relevant hereto, Defendant FirstGroup's interstate passenger bus operator, Sabrina Anderson (hereinafter "Anderson"), was acting in the course and scope of her employment with Defendant FirstGroup and at no relevant time was she engaged in a frolic and/or detour.

16.    At all times relevant hereto, Defendant FirstGroup's employee, Anderson, was acting with both apparent and actual authority on behalf of her employer, principal, and master, Defendant FirstGroup.

17.    Upon information and belief, C.A.V. Enterprise, LLC is the registered owner of the 1990 freightliner FLD 120 truck involved in the collision and is therefore responsible for any relevant acts of its operator, Akos Gubica.

18.    Upon information and belief, at all times relevant hereto, Akos Gubica, was acting within the course and scope of his employment with C.A.V. Enterprise, LLC.

5

## II. FACTS

19.     Upon information and belief, on October 9, 2013, the Plaintiff was one of many passengers occupying seats on Defendant Greyhound's interstate passenger bus en route from New York City, New York, to Cleveland, Ohio.

20.     Upon information and belief, on October 9, 2013, Defendant Greyhound's bus operator Defendant Anderson operated the aforementioned Greyhound interstate passenger bus on Interstate 80 westbound in Union County, Pennsylvania, in such a reckless and negligent fashion, as to cause it to collide with the rear of a visible tractor-trailer operated by Akos Gubica and owned by Karoly Gubica.

21.     Upon information and belief, the aforementioned collision between the Greyhound interstate passenger bus and the Gubica operated truck directly and proximately caused the injuries to the Greyhound Plaintiff to be set forth in more detail below.

22.     Upon information and belief, several other defendants contributed to the incident in question: the driver of the tractor trailer, Akos Gubica, his employer, C.A.V. Enterprise, and the contractor who loaded the trailer, Hi-Tech Resource Recovery, Inc. Upon information and belief, Akos Gubica, C.A.V. Enterprise, and Hi-Tech Resource Recovery, Inc. were negligent and were a proximate cause of this incident, as set further forth below.

23.     At no time relevant hereto was Amalia Ulman (or any of the bus passengers) comparatively negligent.

24.     Upon information and belief, the combined actions and/or omissions of all Defendants herein, individually, jointly and severally, caused the serious and significant injuries suffered by the Plaintiff.

      **a.**     **Subject Matter Jurisdiction**

Case ID: 150903512

25.     This Court has subject matter jurisdiction over this case because as a State Trial Court, it is historically considered a court of general jurisdiction and the underlying collision giving rise to this action occurred within the borders of the Commonwealth of Pennsylvania and sounds principally in Pennsylvania common law.

**b.     Personal Jurisdiction**

26.     This court has personal jurisdiction over principal Defendant Greyhound because Greyhound has sufficient and regular minimum contacts with Philadelphia County and Greyhound has availed itself of the economic benefits of operating its business in Philadelphia County by having a hub transportation center and bus terminal located at 1001 Filbert Street, Philadelphia, PA 19107. By locating its primary Pennsylvania Transportation hub in Philadelphia, less than a mile from the County Courthouse, Greyhound has subjected itself to the personal jurisdiction of this Court.

27.     Additionally, all named defendants are already involved a litigation involving the same set of operative facts in the Commonwealth of Pennsylvania and in this Court, and have appeared generally or have otherwise been adjudicated as subject to personal jurisdiction of the forum state.

**c.     Venue**

28.     Venue is proper in Philadelphia County because under Pa.R.C.P. 2179, Philadelphia County is a place where Defendant Greyhound regularly transacts business, on a daily and ongoing basis, given Greyhound's decision to operate its primary Pennsylvania transportation hub at 1001 Filbert Street, Philadelphia, less than a mile from the Philadelphia County Courthouse.

29.     Additionally, all named defendants are already involved a litigation involving the same

7

Case ID: 150903512

set of operative facts in the before this Court in Philadelphia County, and have appeared generally, or it has otherwise been adjudicated as properly before this court in this matter.

**Count 1**
**Amalia Ulman v. Defendant Greyhound Lines, Inc.**

30.     Plaintiff hereby incorporates the preceding and subsequent paragraphs as if they were set forth fully herein at length.

31.     This Defendant caused Plaintiff, Amalia Ulman, to suffer severe bodily and emotional injuries, impairments, harms and losses, including, but not limited to, her head, face, skin, legs, and other areas of her body, which have impaired her in her ability to live her life in a normal fashion.

32.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant, Greyhound, as more fully described below, Plaintiff, Amalia Ulman, was caused to suffer a loss of past earnings, and the potential impairment of her future earning capacity, to her continuing detriment and loss.

33.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant, Greyhound, as more fully described below, Plaintiff, Amalia Ulman, was caused to incur out of pocket medical bills and expenses for medical treatment, and will continue to do so, in an attempt to cure her substantial bodily and emotional injuries which were caused by this Defendant.

34.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant, as more fully described below, Plaintiff was caused to incur damage and loss to personal property and/or belongings, as well as costs incurred to find alternative transportation and lodging, as a result of being displaced by this crash, all to Plaintiff's detriment and loss.

35.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant,

8

Greyhound, as more fully described below, Plaintiff, Amalia Ulman, was caused or will be caused to incur liability for household help and property maintenance assistance, to aid her in daily activities, responsibilities and chores which she can no longer perform due to the grievous injuries caused by this Defendant.

36.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant, Greyhound, as more fully described below, Plaintiff, Amalia Ulman, has been and will in the future be prevented from attending to and performing her everyday duties, jobs, hobbies, responsibilities and leisure activities, all to her continuing detriment and loss.

37.     By reason of this defendant's conduct before, during and after the aforesaid collision and injuries, and continuing up until the time of the final resolution of this lawsuit, Plaintiff has been subjected to emotional and mental distress, anxiety and depression, to her ongoing detriment and loss.

38.     Upon information and belief, Defendant Greyhound is vicariously liable for the negligent acts and/or omissions of its employee and interstate passenger bus operator, Defendant Sabrina Anderson, as set forth in detail below, at all times relevant hereto.

39.     Upon information and belief, Defendant Greyhound was negligent and reckless in its commission of the following acts and/or omissions:

    a.  Allowing its agent, servant, worker, contractor, sub-contractor and/or employee, to operate an interstate passenger bus when she was too tired to safely do so;

    b.  Not knowing its agent, servant, worker, contractor, sub-contractor and/or employee, was too tired and fatigued to safely operate one of its interstate passenger buses;

    c.  Not having proper systems, policies and procedures in place which would have prevented its agent, servant, worker, contractor, sub-contractor and/or employee, from operating its interstate passenger bus, when she was too tired and fatigued to safely do so;

    d.  Failing to implement and enforce an appropriate fatigue management program

9

coordinated between any and all of the appropriate Greyhound interstate passenger bus operators, dispatchers, supervisors at all levels, management and/or corporate executives;

e. Failing to properly train its interstate passenger bus operators to know what to do when he or she sensed a level of fatigue which would preclude the safe operation of one of its interstate passenger buses;

f. Failing to comply with Federal Motor Vehicle Carrier Safety Regulations as to the maximum time its employee, as an operator of a commercial vehicle and/or interstate passenger bus, should be permitted to operate it without taking a required break/respite;

g. Negligently hiring and continuing to employ Anderson for the purpose of operating one of its interstate passenger buses and/or furthering its business;

h. Failing to properly and fully educate, school and train Anderson prior to employment and/or while on the job, as to how to safely operate Defendant Greyhound's interstate passenger bus;

i. Failing to periodically and regularly assess, evaluate and determine the skill, fitness, and condition of Anderson to safely operate Defendant Greyhound's interstate passenger bus in the Commonwealth of PA;

j. Failing to promulgate written policies, standards and procedures prior to October 9, 2013, which may have helped or guided Anderson to safely operate Defendant Greyhound's interstate passenger bus in the Commonwealth of PA;

k. Failing to establish proper standards, policies and procedures to determine whether potential or actual agents, workers, subcontractors and employees were and/or are fit and capable of properly performing the requirements of their respective job responsibilities;

l. Failing to establish proper and/or safe policies, procedures and/or standards with regard to the required amount of rest its operators must have before being eligible to operate a Greyhound interstate passenger bus;

m. Failing to establish proper and/or safe policies, procedures and/or standards with regard to the maximum number of hours their agents, servants, workers, contractors, sub-contractors and/or employees, such as Anderson, were permitted, to continuously operate its interstate passenger bus;

n. Establishing improper and/or unsafe policies, procedures and/or standards with regard to the maximum number of hours their agents, servants, workers, contractors, sub-contractors and/or employees, such as Anderson, were permitted to continuously operate its interstate passenger bus;

o. Failing to establish proper and/or safe policies, procedures and/or standards with

10

Case ID: 150903512

regard to the continuous or uninterrupted operation of one of Defendants' interstate passenger buses by an agent, servant, worker, contractor, sub-contractor and/or employee, such as Defendant Anderson;

p.  Establishing improper, dangerous and/or unsafe policies, procedures and/or standards with regard to the continuous or uninterrupted operation of one of Defendant Greyhound's interstate passenger buses by an agent, servant, worker, contractor, sub-contractor and/or employee, such as Defendant Anderson;

q.  Scheduling routes, destinations and trips for its interstate passenger bus operators which it knew, or in the exercise of reasonable care should have known, would cause the operator to be excessively fatigued, rendering them unfit to safely operate an interstate passenger bus;

r.  Failing to have a specific system in place to monitor and manage fatigue of its interstate passenger bus operators, so they were not required to drive the vehicle when they were too tired to safely do so;

s.  Failure to have proper passenger safety devices inion the interstate passenger bus;

t.  Failure to have proper operator safety devices inion the interstate passenger bus;

u.  Failure to supervise and/or have proper training procedures and/or policies in place to prevent interstate passenger bus operators from driving these vehicles while distracted, fatigued and/or impaired.

v.  Failure to install and/or utilize an appropriate interstate passenger bus driver drowsiness and/or fatigue detection system;

w.  Even though Defendant had reason to believe its interstate passenger bus operators drove while drowsy and/or fatigued, Defendant's agents, employees and/or representatives made a conscious decision not to install and/or utilize an appropriate driver drowsiness and/or fatigue detection system on the subject interstate passenger bus;

x.  Defendant placed its pecuniary interest ahead of the safety of its interstate bus passengers and specifically Plaintiff, Amalia Ulman, by failing to install and or utilize a driver drowsiness and/or fatigue detection system, even though it could be done at a reasonable expense;

y.  Failure to install and/or utilize a lane keeping assist system on the subject interstate passenger bus;

z.  Even though Defendant Greyhound had reason to believe its interstate passenger bus operators drove while drowsy and/or fatigued and would inadvertently allow said vehicles to drift outside of the intended lanes of travel, Defendant Greyhound's employees, agents and/or representatives made a conscious decision not to install and/or utilize a lane keeping assist system on the subject interstate

11

passenger bus;

aa. Defendant placed its pecuniary interest ahead of the safety of all passengers, and specifically Plaintiff, Amalia Ulman, by failing to install and or utilize a lane keeping assist system on the subject interstate passenger bus, even though it could be done at a reasonable expense;

bb. Violation of 49 CFR § 390.11, which requires all motor carriers to observe of the duties and standards contained in the Federal Motor Carrier Safety Regulations;

cc. 49 CFR § 390.13, which prohibits motor carriers from aiding, abetting, encouraging or requiring its employees to violate the Federal Motor Carrier Safety Regulations;

dd. Violation of 49 CFR §392.6, which prohibits motor carriers from permitting or requiring their drivers to operate the subject bus at a speed in excess of the posted speed limit;

ee. Violation of 75. Pa. Cons. Stat. §1574; Permitting an unauthorized person to drive;

ff. Violation of 75. Pa. Cons. Stat. §1575; Permitting violation of title;

gg. Negligence per se;

hh. Failing to implement internal policies, procedures, standards and practices to prevent its drivers from operating its interstate passenger bus vehicles while too fatigued, impaired and/or distracted to safely do so;

ii. Failing to install sufficient, appropriate and/or readily available technological devices to prevent, control and/or monitor its drivers, so that they would not continue to drive Defendant's interstate passenger buses while too fatigued to safely do so;

jj. Failing to utilize appropriate business management techniques and systems to prevent, control and/or monitor its drivers, so that they would not continue to operate Defendant's interstate passenger bus while too fatigued to safely do so;

kk. Failing to install sufficient, appropriate and/or readily available technological controls to prevent, control and/or monitor its drivers so that they would not continue to operate Defendant's interstate passenger buses while too impaired to safely do so;

ll. Failing to utilize appropriate business management techniques and systems to prevent, control and/or monitor its drivers so that they would not continue to operate Defendant's interstate passenger buses while too impaired to safely do so;

mm.     Failing to install sufficient, appropriate and/or readily available

12

technological controls to prevent, control and/or monitor its drivers so that they would not continue to operate Defendant's interstate passenger buses while too distracted to safely do so;

nn. Failing to utilize appropriate business management techniques and systems to prevent, control and/or monitor its drivers so that they would not continue to drive Defendant's motor vehicles while too distracted to safely do so;

oo. Failing to reasonably ensure, check and/or verify that its interstate drivers utilized available training courses and continuing education seminars and learning experiences to be able to recognize the first signs of fatigue while operating an interstate passenger bus, and take appropriate measures to protect the safety of its passengers;

pp. Failing to realize that Defendant Greyhound's agents, employees and/or representatives had committed, or negligently allowed the commission of, the specific averment in paragraphs "hh" through "oo" above;

qq. Failing to institute a system of random and/or unannounced spot checks conducted by Defendant Greyhound managers, supervisors, agents, employees, servants, contractors and/or representatives, at mandatory check points, bus stops and/or terminals, along a Greyhound bus operator's assigned route, so as to reasonably ensure that the operator was not too fatigued, impaired or distracted to continue to safely operate a bus;

rr. Defendant's agents, employees and/or representatives knowingly placed its pecuniary interest ahead of the safety of all passengers and specifically, Plaintiff;

ss. Continuing to employ Anderson and entrusting her to operate its interstate bus and to transport passengers when Greyhound's agents, representatives and/or employees knew and/or had reason to know Anderson was unfit to do so and/or had dangerous propensities as a bus operator; and

tt. Encouraging, pressuring, and/or forcing Anderson to operate its interstate bus with passengers, while dangerously fatigued, by imposing job related leverage on Anderson via lost pay, lost incentives, lost promotions, lost opportunities to drive subsequent routes, and/or firing.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

## Count 2
### Amalia Ulman v. Defendant Greyhound Lines, Inc.

13

40.     Plaintiff hereby incorporates the preceding and subsequent paragraphs as if they were set forth fully herein at length.

41.     Defendant Greyhound, by reason of master and servant principles of law, also known as respondeat superior, is vicariously liable for the acts and omissions of its personnel as described herein, particularly Defendant Anderson, and in that regard plaintiff incorporates herein by reference the subsequent Count, as if it were set forth fully herein.

        WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

### Count 3
### Amalia Ulman v. Sabrina Anderson

42.     Plaintiff hereby incorporates the preceding and subsequent paragraphs as if they were set forth fully herein at length.

43.     This Defendant caused Plaintiff, Amalia Ulman, to suffer severe bodily and emotional injuries, impairments, harms and losses, including, but not limited to, head, face, skin, legs, and other areas of her body, which have impaired her in her ability to live her life in a normal fashion.

44.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant, as more fully described below, Plaintiff, Amalia Ulman, was caused to suffer a loss of past earnings, and the potential impairment of her future earning capacity, to her continuing detriment and loss.

45.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant,

as more fully described below, Plaintiff, Amalia Ulman, was caused to incur out of pocket medical bills and expenses for medical treatment, and will continue to do so, in an attempt to cure her substantial bodily and emotional injuries which were caused by this Defendant.

46.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant,

47.     as more fully described below, Plaintiff was caused to incur damage and loss to personal property and/or belongings, as well as costs incurred to find alternative transportation and lodging, as a result of being displaced by this crash, all to her detriment and loss.

48.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant, as more fully described below, Plaintiff, Amalia Ulman, was caused or will be caused to incur liability for household help and property maintenance assistance, to aid her in daily activities, responsibilities and chores which she can no longer perform due to the grievous injuries caused by this Defendant.

49.     As a direct and proximate result of the negligent acts and/or omissions of this Defendant, as more fully described below, Plaintiff, Amalia Ulman, has been and will in the future be prevented from attending to and performing her everyday duties, jobs, hobbies, responsibilities and leisure activities, all to her continuing detriment and loss.

50.     By reason of this defendant's conduct before, during and after the aforesaid collision and injuries, and continuing up until the time of the final resolution of this lawsuit, Plaintiff has been subjected to emotional and mental distress, anxiety and depression, to her ongoing detriment and loss.

51.     On information and belief, Defendant Sabrina Anderson was negligent, careless, and reckless in her commission of the following acts and/or omissions:

      a.   Continuing to drive an interstate passenger bus when she knew, or in the exercise of reasonable care should have known, she was too fatigued to safely do so;

b.  Not pulling off to the side of the road to rest when she knew, or in the exercise of reasonable care should have known, she was too fatigued to continue operating said interstate passenger bus;

c.  Continuing to drive an interstate passenger bus for an excessively long period of time;

d.  Operating an interstate passenger bus for a continuous period of time that violated State and/or Federal laws;

e.  Failure to abide by the laws of the Commonwealth of Pennsylvania and applicable provisions of the Federal Motor Carrier Safety Regulations;

f.  Violating federal safety regulations as to the maximum amount of time allowing for continuous operation of a commercial motor vehicle and/or interstate passenger bus;

g.  Not utilizing her skill and training in managing her fatigue in such a fashion as to not cause a collision involving fatalities and injuries to the interstate bus passengers she was responsible for transporting;

h.  Not having sufficient skill and training to know how to manage fatigue when she reached the level of not being able to safely operate an interstate passenger bus;

i.  Following another motor vehicle too closely so as to be unable to stop her interstate passenger bus before colliding into its rear;

j.  Failing to maintain the assured clear distance ahead;

k.  Endangering the welfare of every passenger on her interstate passenger bus, by not being an attentive bus operator;

l.  Endangering the welfare of other motor vehicle operators and pedestrians on or near the roadway, by not being an attentive interstate passenger bus operator;

m.  Operating her interstate passenger bus at an unsafe and/or excessive speed;

n.  Operating her interstate passenger bus too fast for traffic conditions then and there existing;

o.  Operating her interstate passenger bus too fast for weather conditions then and there prevailing;

p.  Not maintaining her required training refresher courses so as to permit her to legally be able to operate an interstate passenger bus;

q.  Falling asleep behind the wheel of the interstate passenger bus, just prior to the crash that is the subject of this Complaint;

16

r.  Operating the subject interstate passenger bus while she was too fatigued to do so in a safe manner;

s.  Operating the subject interstate passenger bus while she was too impaired to do so in a safe manner;

t.  Operating the subject interstate passenger bus while she was too distracted to do so in a safe manner;

u.  Violation of 49 CFR § 383.111(c), which requires, among other things, commercial vehicle operators to maintain a reasonable speed and maintain a reasonable distance from other commercial vehicle operators;

v.  Violation of 49 CFR § 391.11, which prohibits a person from operating a commercial motor vehicle unless that person has the qualifications and experience necessary to safely operate the vehicle and meets the requirements contained in the Federal Motor Carrier Safety Regulations;

w.  Violation of CFR § 391.41, which prohibits a person from operating a commercial motor vehicle if that person has a physical or mental disease, illness or condition that prevents them from being able to safely operate the vehicle;

x.  Violation of 49 CFR § 392.2, which requires the commercial motor vehicle to be operated in accordance with the laws, ordinances and regulations of the jurisdiction in which it is being operated;

y.  Violation of 49 CFR § 392.3, which prohibits a person from operating a commercial vehicle when their ability or alertness is impaired through fatigue, illness or any other cause;

z.  Violation of 49 CFR § 395.5, which prohibits a person from operating a commercial motor vehicle in excess of the hours-of-service regulations set forth in this section;

aa. Violation of 75. Pa. Cons. Stat. § 3361; Driving Vehicle at Safe Speed;

bb. Violation of 75. Pa. Cons. Stat. § 3714; Careless Driving;

cc. Violation of 75. Pa. Cons. Stat. § 3736; Reckless Driving;

dd. Violation of 75. Pa. Cons. Stat. § 3310; Following Too Closely;

ee. Violation of 75. Pa. Cons. Stat. § 3362; Maximum Speed Limits;

ff. Not utilizing, or failing to properly utilize, technology available to Defendant Anderson, to detect when she was too fatigued, impaired and/or distracted to continue safely operating an interstate passenger bus;

17

gg. Not being aware of and utilizing the existence of available, company provided technology, which Defendant Anderson could have utilized to help her detect when she was too fatigued, impaired and/or distracted to continue operating a bus;

hh. Failing to comply with mandatory continuing education requirements for interstate passenger bus operators maintaining her type of commercial driver's license;

ii. Failing to possess proper specific operating licensure or class certification on her license, so as to be able to legally operate the specific type of interstate passenger bus involved in the collision that is the subject of this Complaint;

jj. Operating the subject interstate passenger bus, long after she knew, or should have known, she was too fatigued to do so in a safe manner;

kk. Operating the subject interstate passenger bus, long after she knew, or should have known, she was too impaired to do so in a safe manner; and

ll. Operating the subject interstate passenger bus, long after she knew, or should have known, she was too distracted to do so in a safe manner.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

### Count 4
### Amalia Ulman v. FirstGroup America

52. Amalia Ulman hereby incorporate all of the preceding paragraphs of this Complaint as if set forth at length herein and as if set forth individually against Defendant FirstGroup.

53. At all times relevant hereto, by reason of master servant principles of law, also known as respondeat superior, Defendant FirstGroup is vicariously liable for the acts and/or omissions of Defendant Greyhound Lines, Inc. and Defendant, Sabrina Anderson.

54. At all times relevant hereto, Defendant FirstGroup had control over the operations of Defendant Greyhound Lines, Inc. and Sabrina Anderson, and therefore directly and proximately

18

caused harm to Plaintiff.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

### Count 5
### Amalia Ulman v. C.A.V. Enterprise, LLC

55.    On October 9, 2013, C.A.V. Enterprise, LLC was the employer of Akos Gubica.

56.    On October 9, 2013, C.A.V. Enterprise, LLC authorized Akos Gubica to operate a tractor trailer that Akos Gubica negligently operated causing a collision with a Greyhound bus.

57.    In a related case concerning the same incident, and facing the same allegations set forth herein, Defendant Greyhound has alleged that C.A.V. Enterprise, LLC acted negligently on or about October 9, 2013 when it:

     a.   Permitted Akos Gubica to operate a tractor trailer without working headlights, taillights, hazard lights, flashing lights or reflectors;

     b.   Allowed Akos Gubica to drive in a reckless manner which impeded the flow of traffic;

     c.   Allowed Akos Gubica to operate a tractor trailer without a proper breaking system;

     d.   Allowed Akos Gubica to drive at a recklessly slow speed;

     e.   Allowed Akos Gubica to not use flashers and/or taillights as appropriate;

     f.   Allowed Akos Gubica to operate a tractor trailer that exceeded the maximum gross weight permitted by law.

     g.   Allowed Akos Gubica to drive in a manner that led to injury and/or death;

     h.   Allowed Akos Gubica to take out a tractor trailer without properly inspecting the trailer;

     i.   Allowed Akos Gubica to operate a tractor trailer that was not sufficiently conspicuous;

      j.   Failed to properly train Akos Gubica;

      k.  Negligently hired Akos Gubica as a tractor trailer operator;

      l.   Negligently retained Akos Gubica as a tractor trailer operator;

      m. Failed to appropriately maintain the tractor trailer in accordance with State and Federal statutes and regulations, including but not limited to, 49 C.F.R. §3502359;

      n.  Failed to appropriately maintain and service the tractor trailer operated by Akos Gubica;

      o.  Failed to take the tractor trailer Akos Gubica was operating on October 9, 2013 out of service.

58.     As a direct and proximate result of the above described negligent acts and/or omissions of this Defendant, Plaintiff, Amalia Ulman, was caused to suffer such damages as described in Paragraphs 26 through 32 of this Complaint.

     WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

### Count 6
### Amalia Ulman v. C.A.V. Enterprise, LLC

59.     Plaintiff hereby incorporates the preceding and subsequent paragraphs as if they were set forth fully herein at length.

60.     Defendant C.A.V. Enterprise, LLC, by reason of master and servant principles of law, also known as *respondeat superior*, is vicariously liable for the acts and omissions of its personnel as described herein, particularly Akos Gubica, and in that regard plaintiff incorporates herein by reference the subsequent Count, as if it were set forth fully herein.

     WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars

($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

### Count 7
### Amalia Ulman v. Akos Gubica

61.     On October 9,2013, Akos Gubica was the employee, agent, servant or independent contractor of C.A.V. Enterprise, LLC.

62.     On October 9, 2013, Akos Gubica was operating a tractor trailer within the course and scope of his employment with C.A.V. Enterprise, LLC.

63.     On October 9,2013, Akos Gubica negligently operated his tractor trailer causing a collision with a Greyhound bus operated by Sabrina Anderson.

64.     Defendant Greyhound believes that Akos Gubica, acted recklessly and negligently on or about October 9,2013 while he:

      a.  operated a tractor trailer without working headlights, taillights, hazard lights, flashing lights, or reflectors;

      b.  drove recklessly in a manner which impeded the flow of traffic;

      c.  drove without a proper braking system;

      d.  drove at a recklessly slow speed;

      e.  failed to use flashers and/or taillights;

      f.  exceeded the gross maximum weight permitted by law;

      g.  drove in a manner that led to injury and/or death;

      h.  failed to properly inspect the tractor trailer prior to taking it onto the roadway;

      i.  failed to maintain a lane of travel;

      j.  failed to drive at a safe speed;

      k.  failed to maintain the tractor trailer tires in good condition;

      l.  failed to obey all traffic laws;

Case ID: 150903512

m.   violated state and federal statutes and regulations, including but not limited to, 49 C.F.R. § 350-359; and

n.   operated a tractor trailer that was not sufficiently conspicuous.

65.   As a direct and proximate result of the above described negligent acts and/or omissions of this Defendant, Plaintiff, Amalia Ulman, was caused to suffer such damages as described in Paragraphs 26 through 32 of this Complaint.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

### Count 8
### Amalia Ulman v. Hi-Tech Resource Recovery

66.   Akos Gubica operated a truck on October 9, 2013 that was loaded at Hi-Tech resource recovery Inc. with municipal waste.

67.   On October 8, 2013, Hi - Tech Resource Recovery, Inc. was the employee, agent, servant or independent contractor of C.A.V. Enterprise, LLC and/or Karolly Gubica and/or Akos Gubica and was responsible for correctly loading the tractor trailer, correctly weighing the tractor trailer and correctly tarping and securing the load on the back of the tractor trailer.

68.   The truck Akos Gubica operated on October 9, 2013 was permitted to weigh 80,000 pounds.

69.   The truck loaded by Hi -Tech Recourse Recovery, Inc. weighed 88,350 pounds.

70.   Prior to departing Hi - Tech Resource Recovery, Inc. the truck operated by Akos Gubica was weighed at the location.

71.   In a related case concerning the same incident, and facing the same allegations set forth herein, Defendant Greyhound has alleged that Hi - Tech Resource Recovery, Inc. acted

22

recklessly and negligently on or about October 8, 2013 when it:

    a.  Failed to properly weigh the tractor trailer operated by Akos Gubica;

    b.  Informed Akos Gubica that the truck was under 80,000 pounds;

    c.  Failed to properly secure the municipal waste loaded on the tractor trailer;

    d.  Failed to properly tarp the municipal waste located on the tractor trailer;

    e.  Permitted Akos Gubica to operate a tractor trailer loaded with excess weight; and

    f.  Allowed Akos Gubica to leave Hi - Tech Resource Recovery, Inc. in a tractor trailer that was not sufficiently conspicuous.

72.    As a direct and proximate result of the above described negligent acts and/or omissions of this Defendant, Plaintiff, Amalia Ulman, was caused to suffer such damages as described in Paragraphs 26 through 32 of this Complaint.

    WHEREFORE, Plaintiff demands judgment in her favor and against Defendant(s) herein individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with compensatory and punitive damages, interest, costs, delay damages and such further relief as may be appropriate.

MARCIANO & MACAVOY, P.C.

By: *Kevin R. Marciano*
    KEVIN R. MARCIANO, ESQUIRE
    PATRICK D. MacAVOY, ESQUIRE
    Attorneys for Plaintiff

Date:  October 2, 2015

23

## VERIFICATION

I, KEVIN R. MARCIANO, ESQUIRE, attorney for Plaintiff, herein make this verification and state that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

*Kevin R. Marciano*

KEVIN R. MARCIANO, ESQUIRE

Date:   October 2, 2015

24

Case ID: 150903512